# Exhibit 1

Opinion and Order of the Oakland Circuit Court
(Nov. 24, 2020)

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

RICHARD J. HALLMAN,

        Plaintiff,

v

MELISSA E. MENDOZA and MELISSA
E. MENDOZA, INC.,

        Defendants.
_____/

Case No. 2020-179909-CK
Hon. Phyllis C. McMillen

OPINION AND ORDER
At a session of Court
Held On

_____November 24, 2020_____

This matter is before the Court on Defendants' motion for summary disposition as pursuant to MCR 2.116(C)(7) and (C)(8). The Court heard oral argument on November 4, 2020.

**I.     BACKGROUND**

Plaintiff, Richard J. Hallman ("Hallman") filed this action asserting claims for breach of contract and defamation against Defendants, Melissa E. Mendoza and Melissa E. Mendoza, Inc. (together, "Mendoza"), arising out of a series of events occurring in late 2018 and early 2019.

On November 7, 2018, Hallman pleaded guilty to possession of marijuana in the 52nd District Court, Third Division. He was placed on probation for 12 months and was

FILED   Received for Filing   Oakland County Clerk   11/24/2020 5:10 PM

granted deferral status pursuant to MCL 333.7411[1]. The terms of his probation required him to "complete" substance abuse counseling. Hallman's original probation officer, Beth Cristobal, told Hallman that "completion" would require up to twelve weeks of counseling. Hallman retained Mendoza, in part because her office was conveniently located, and she accepted his insurance. Hallman informed Mendoza that he was attending counseling to satisfy one of the terms of his probation. He executed a HIPAA release allowing Mendoza to release "dates of attendance"; the release was valid for one year.

Hallman began meeting with Mendoza on or about November 23, 2018. He met with her approximately twelve times between November 23, 2018 and February 15, 2019.

On January 30 Hallman met with his "interim" probation officer, who told him the Court had received nothing from Mendoza to confirm his attendance at counseling since an initial letter dated December 7, 2018. Hallman was told he had one week to provide proof to the Court. Hallman told Mendoza about this, including the one-week deadline, during their session on February 1, but she failed to provide proof to the Court as he had requested. On February 14, Hallman received notification of a probation violation dated February 11, based on Hallman's failure to verify his court-ordered substance abuse counseling. The hearing on the violation was scheduled for March 5. Hallman contacted Mendoza, asking her to send confirmation to his probation officer. On February 15, Mendoza finally faxed documentation to the probation department confirming his attendance. Hallman's twelfth session with Mendoza was also on

---

[1] The statute provides that for some first- or second-time offenders convicted of certain controlled substance offenses, if the offender completes the terms of his probation the charges will be dismissed from his record.

2

February 15, and he believed he was done after that visit. He asked Mendoza for a final letter, which she provided.

However, on February 27, Hallman was told by yet another "interim" probation officer that the letter must state he "completed" counseling, and that completion was not based on the number of sessions, but rather, was up to the counselor to determine. Hallman sent a text message to Mendoza on February 26 asking if "she felt that way", and asking her to write a new letter stating that he "completed" counseling. She refused, telling Hallman for the first time that she believed he should stay in counseling for the full term of his probation (twelve months).

At that point, Hallman started looking for a different counselor, and wanted to get his records from Mendoza. He filled out HIPAA request for information ("ROI") authorizing Mendoza to release his entire file to his sister, Samantha Hallman ("Samantha"). Within hours, Mendoza sent several text messages to Hallman, asking "for what reason" he wanted his file released to Samantha. Mendoza stated the ROI needed to be filled out for release to a governmental entity and a text message request was not acceptable.[2] Samantha attempted to reach Mendoza via phone, but her call was not returned. Samantha then attempted to visit Mendoza's office (during normal business hours) and was told by another tenant of the building that Mendoza was not there but should be there later in the day. Samantha went to the office later that day, but Mendoza was not there. On February 28, Mendoza sent an email to Hallman, refusing his request to release his records, stating that he needed to fill out a new ROI pursuant to "HIPPA [sic] law" and the records could be released to him only, but not via e-mail, and that she is "NOT available to meet in person". In response, Samantha wrote an email later that same

---

[2] Hallman's request was not for a governmental entity, nor was it via text message.

3

day to Mendoza stating that Mendoza's conduct violated HIPAA and demanding that she release the records pursuant to Hallman's request, which was proper under HIPAA.

Mendoza sent a text message to Hallman at 12:15 am on March 1, again telling him to fill out a new ROI. He replied that he had done it the day before. Mendoza called Hallman at 12:20 am; Hallman did not answer his phone. Mendoza sent Hallman an email at 12:39 am, again telling him to fill out a new ROI.[3] At that point, Mendoza had contacted Hallman eight times in less than 48 hours.

Later that same morning (March 1), Hallman and Samantha jointly called Mendoza, but she did not answer. Samantha left her a voice message stating, in effect, this is getting out of hand, please return my call.

Instead of returning Samantha's call, Mendoza called the probation department that same day, without Hallman's knowledge or consent, purportedly "to get dismissed from making clinical recommendations", although she was not court-appointed and had not been asked to make clinical recommendations. Mendoza stated during this call that Hallman and Samantha were "repeatedly contacting her, harassing her, and threatening to come to her office".

At the violation hearing on March 5, after pleading guilty with explanation to the violation allegations, Hallman learned that Mendoza had contacted the probation department and reported that he had been threatening and harassing her. Mendoza indicated that the threats were meant to get her to change the report. The Court, after going off the record and reviewing the email from Samantha to Mendoza, berated

---

[3] At no point during these text messages and emails did Mendoza state that the reason she was requiring a new ROI was because of the expiration date on the existing ROI (mistakenly showing February 27 as the expiration date).

4

Hallman. The Court sentenced Hallman to five WWAM[4] days and revoked his deferral status under MCL 333.7411.

In the complaint, Plaintiff alleges that Mendoza is liable for breach of contract based on her failure to provide confirmation of his counseling to the probation department. He also alleges that Mendoza is liable for defamation for falsely telling the probation department that he was threatening and harassing her.

In the instant motion, Mendoza moves for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8) based on estoppel, immunity, statute of frauds, and failure to state a claim for defamation.

## II.   SUMMARY DISPOSITION STANDARDS

MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the grounds that a claim is barred because of immunity granted by law or the statute of frauds. When reviewing a motion under MCR 2.116(C)(7), a court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. MCR 2.116(G)(5); *Maiden*, 461 Mich at 119. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. *Guerra v Garratt*, 222 Mich App 285, 289; 564 NW2d 121 (1997). However, if a question of fact exists to the extent

---

[4] Weekend and Weekday Alternative for Misdemeanants ("WWAM") is an Oakland County program that allows eligible participants to perform supervised community service in lieu of serving jail time.

5

that factual development could provide a basis for recovery, dismissal is inappropriate. *Id*.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003). The pleadings are comprised of the complaint, a cross-claim, a counterclaim, a third-party complaint, an answer to any of these, and a reply to an answer. *Village of Diamondale v Grable*, 240 Mich App 553, 565; 618 NW2d 23 (2000). All well-pleaded factual allegations are accepted as true and construed in the light most favorable to the non-movant. *Wade v Dep't of Corrections*, 439 Mich 158, 162-163; 483 NW2d 26 (1992). However, a mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to create a cause of action. *York v Fiftieth Dist Court*, 212 Mich App 345, 347; 536 NW2d 891 (1995); *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 409; 792 NW2d 686 (2010) (on a (C)(8) motion, the Court must accept as true facts alleged in the complaint, but not conclusions). A court should grant the motion when the claims are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119.

### III.    ANALYSIS

A.    Estoppel

Mendoza argues the Hallman's claims are barred by estoppel (specifically, collateral estoppel, crossover estoppel, and judicial estoppel), because he voluntarily pleaded guilty to the probation violation and is therefore is estopped from arguing that he suffered damages as a result of Mendoza's conduct.

  *1.*  *Collateral Estoppel and Crossover Estoppel*

Generally, for collateral estoppel (also known as issue preclusion) to apply, three elements must be satisfied: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; (2) "the same parties must have had a full [and fair] opportunity to litigate the issue"; and (3) "there must be mutuality of estoppel." *Storey v Meijer, Inc*, 431 Mich 368, 373 n 3; 429 NW2d 169 (1988).

Crossover estoppel is a subset of collateral estoppel, and involves the preclusion of an issue in a civil proceeding after a criminal proceeding and vice versa. *In re Forfeiture of $1,159,420,* 194 Mich App 134, 145–146; 486 NW2d 326 (1992).

Hallman's claims are not barred by collateral estoppel or crossover estoppel. In the District Court, Hallman pleaded guilty to the allegations that he submitted a dilute sample and failed to provide proof of attendance at counseling. He did not plead guilty to harassing or threatening Mendoza, and did not even know that Mendoza had made those accusations until after he tendered his plea. Nor was he allowed the opportunity to address the allegations before the District Court imposed the sentence. As discussed more fully below, the evidence establishes that Mendoza's accusations about Hallman were a proximate cause of the District Court imposing a harsher sentence that it otherwise would have. Hallman is not estopped from arguing that Mendoza's conduct (as opposed to his guilty plea) caused his injury.

  *2.*  *Judicial Estoppel*

Under the doctrine of judicial estoppel, a plaintiff is "estopped from maintaining a position inconsistent with one he had asserted under oath in an earlier judicial

7

proceeding. Sometimes described as the doctrine against the assertion of inconsistent positions, judicial estoppel is widely viewed as a tool to be used by the courts in impeding those litigants who would otherwise play "fast and loose" with the legal system." *Paschke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994) (internal citation omitted). For judicial estoppel to apply, a party must have successfully and "unequivocally" asserted a position in a prior proceeding that is "wholly inconsistent" with the position now taken. *Id.* at 509–510; *Szyszlo v Akowitz*, 296 Mich App 40, 51; 818 NW2d 424 (2012).

Clearly, Hallman's claims are not barred by judicial estoppel. He did not take a position in the prior proceeding that is wholly inconsistent with his claims against Mendoza for defamation and breach of contract. The position taken by Hallman in the District Court, i.e., that he submitted a dilute sample and failed to timely provide proof of counseling are not inconsistent with the claims here that Mendoza failed to comply with her obligation to send proof of his counseling and defamed him. Simply put, this is *not* a case where Hallman is attempting to play "fast and loose" with the legal system.

B.   Immunity

Mendoza argues that she is entitled to absolute immunity from Hallman's claims under several interrelated theories – witness immunity, testimonial immunity, and quasi-judicial immunity.

The Michigan Supreme Court addressed these concepts in *Maiden v Rozwood*, 461 Mich 109, 134; 597 NW2d 817 (1999):

> witnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity. This immunity is available to those serving in a quasi-judicial adjudicative capacity as well as "those persons other than judges without whom the judicial process could not function." Witnesses

8

who are an integral part of the judicial process "are wholly immune from liability for the consequences of their testimony or related evaluations." Statements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried. Falsity or malice on the part of the witness does not abrogate the privilege. The privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation. [citations omitted]

Mendoza argues that quasi-judicial immunity bars Hallman's claim for defamation, because the claim is based on March 1, 2019 communications between Mendoza and the court's probation officer. Mendoza, as Hallman's counselor, was acting in quasi-judicial role. Mendoza cites *D'Itri v Hobbs*, unpublished opinion per curiam of the Court of Appeals, issued Jan. 27, 2015 (Docket Nos. 315869, 319038), where the Court held that a court-appointed psychologist was immune from liability for recommendations regarding child custody in a report to the court. The *D'Itri* Court cited *Diehl v Danuloff*, 242 Mich App 120, 134; 618 NW2d 83 (2000), wherein the Court held that "the doctrine of quasi-judicial immunity extends to court-appointed psychologists ordered to conduct evaluations and make recommendations to the trial court in custody disputes."

Mendoza additionally argues that she is entitled to witness immunity, because she was giving testimony to the court and assisting in the judicial process, citing *Maiden*, 461 Mich at 134. Even if she was not a witness, immunity extends to nontestimonial statements made by witnesses in the course of judicial proceedings. *Oesterle v Wallace*, 272 Mich App 260, 264; 725 NW2d 470 (2006) ("Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried.").

9

In response, Hallman argues Mendoza is not entitled to immunity under any of these concepts, because she was not a witness, quasi-judge, or attorney in relation to any of the proceedings. She was not court-appointed, and was not asked by the District Court to evaluate Hallman or provide a recommendation. Her statements to the probation department were not pleadings, nor were they in the form of testimony or an affidavit given in a probation violation hearing. Further, Mendoza's statements were not given in relation to the matters at issue in the probation violation – the diluted sample or the failure to provide proof of counseling.

The cases cited by Mendoza are all inapposite. In *Maiden*, the statements were made by a witness, i.e., a participant in a judicial proceeding. In *Oesterle*, the statement was made by an attorney in the course of settlement negotiations as part of judicial proceedings. Here, the statements by Mendoza were not privileged in any way, and they did not relate to the matters before the court. There is no public policy rationale for giving immunity to Mendoza under these circumstances. Mendoza's statements were not even given in response to an inquiry from the Court or the probation department. She called probation to say that she did not feel comfortable treating Hallman, but in reality she called in order to retaliate against Hallman for his sister's insistence that Mendoza release Hallman's records. No one asked Mendoza to testify at the hearing. Her statements were not made under oath, and not subject to cross examination.

The Court finds that Mendoza is not entitled to immunity. She was neither a witness nor a quasi-judicial officer. She was not asked to give testimony at the probation violation hearing, she was not appointed by the court to evaluate Hallman or make a recommendation. Her telephone call to the probation department, purportedly to tell them

she wanted to be released from seeing Hallman, makes no sense given that the court had no involvement in selecting her to provide his counseling; she did not need the court's permission to stop treating Hallman. Her call to the probation department on March 1 (four days prior to the hearing) was not in response to any inquiry from the court or the probation department and appears to have been completely gratuitous. Crucially, her statements were *not* "relevant, material, or pertinent to the issue being tried". *Maiden*, 461 Mich at 134; *Oesterle*, 272 Mich App at 264. They did not relate to the dilute urine sample or (Mendoza's) failure to provide proof of counseling. For all of these reasons, the policy rationale for granting immunity does not apply here, and Mendoza is not entitled to immunity.

C.   Causation

In order to be a proximate cause, the negligent conduct must have been a cause of the plaintiff's injury and the plaintiff's injury must have been a natural and probable result of the negligent conduct. These two prongs are respectively described as "cause-in-fact" and "legal causation." See *Skinner v Square D Co,* 445 Mich 153, 162–163; 516 NW2d 475 (1994). While legal causation relates to the foreseeability of the consequences of the defendant's conduct, the cause-in-fact prong "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* at 163. Proximate cause is usually a factual issue to be decided by the jury. *Schutte v Celotex Corp*, 196 Mich App 135, 138; 492 NW2d 773 (1992).

Mendoza argues Hallman's claims fail because he cannot prove that Mendoza's actions were a proximate cause of the sentence imposed by the District Court. Hallman cannot simply present evidence that Mendoza *may* have caused his injury. Rather, he

11

must set forth "specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004) (citation omitted). According to Mendoza, Hallman has presented only mere speculation that he would have received a lighter sentence absent her involvement.[5] Hallman voluntarily pleaded guilty to the probation violation, after voluntarily waiving his right to a contested hearing and his right to counsel. The guilty plea, and not Mendoza's conduct, caused Hallman to be sentenced to 5 WWAM days and loss of his deferral status. The District Court stated that deferral status is reserved for people who complete probation without any violations; Hallman pleaded guilty to providing a dilute urine sample in addition to the failure to complete counseling. Thus, Hallman's plea of guilty to the dilute urine sample was sufficient to cause the loss of deferral status, without even considering the failure to confirm counseling. Mendoza had nothing to do with the dilute urine sample.

In response, Hallman argues there can be more than one proximate cause contributing to an injury. Mendoza's failure to report Hallman's counseling attendance was the proximate cause of the probation department's decision to issue a probation violation notice in the first place; the dilute urine sample, on its own, was not enough to trigger the violation. In addition, the probation department had recommended a sentence of three WWAM days or three days in jail, and retention of his deferral status under MCL 333.7411. Yet after learning of the statements Mendoza made to probation that Hallman and his sister had been threatening and harassing her, the District Court sentenced him to five WWAM days and revoked his deferral status. The transcript of the hearing reveals

---

[5] This argument about the sufficiency of the evidence falls under MCR 2.116(C)(10).

that the Court was very much focused on Mendoza's statements to the probation department, and this resulted in a harsher sentence.

The Court finds that Hallman has presented sufficient evidence to establish that Mendoza's conduct was a proximate cause of his injury. It is well-established that there can be more than one proximate cause contributing to an injury. *Brisboy v Fibreboard Corp*, 429 Mich 540; 418 NW2d 650 (1988). Hallman is correct that the probation violation was initiated in the first instance because of Mendoza's failure to send confirmation of his attendance. At the hearing, Hallman waived his right to a contested hearing and his right to counsel and pleaded guilty to the violations alleged in the probation violation order – the dilute sample and failure to provide proof of counseling. He did *not* plead guilty to threatening or harassing Mendoza or admit that he needed a full year of counseling. He tendered the guilty plea without having any knowledge that Mendoza had contacted the probation department and accused him of harassing and threatening her. After going off the record to review the statements Mendoza had made to the probation department about Hallman and his sister, the District Court reacted very negatively and did not give Hallman the opportunity to explain the circumstances. Hallman's guilty plea to the specific items alleged in the violation notice was *not* the sole proximate cause of his injury, especially where it came before the District Court knew of Mendoza's statements. It is clear from the transcript that the District Court increased Hallman's sentence based on the information provided by Mendoza. There is sufficient evidence to support a reasonable inference of a logical sequence of cause and effect.

D.  Breach of Contract

In addition to the arguments above, Mendoza argues the claim for breach of contract is barred by the statute of frauds. MCL 566.132(1) provides, in part:

> In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
>
> (g) *An agreement, promise, contract, or warranty of cure relating to medical care or treatment*. This subdivision does not affect the right to sue for malpractice or negligence. [emphasis added]

Mendoza argues Hallman's claim falls within the statute because it relates to an agreement, promise, contract relating to medical care or treatment. However, Hallman's allegations are that Mendoza failed to comply with the agreement to send reports of his attendance to the probation department; *not* that she failed to provide medical care or treatment or that the medical care was somehow improper. The HIPAA release which Hallman executed (and which was acknowledged by Mendoza) states that she was permitted to release "dates of attendance"; the release was valid for one year. Mendoza knew that Hallman was attending counseling to satisfy the terms of his probation and agreed to send confirmation of his attendance to probation. Her failure to do so is the basis of the breach of contract claim. The claim is not "relating to medical care or treatment" and the statute of frauds does not apply.

E.  Defamation

A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Smith v Anonymous Joint Enterprise*, 487 Mich 102,

14

113; 793 NW2d 533 (2010). Generally, to sustain a claim of defamation, the following elements must be established: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. *Id*.; *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc*, 197 Mich App 48, 51-52; 495 NW2d 392 (1992).

Mendoza argues the claim for defamation fails because Hallman failed to plead with specificity the allegedly defamatory statements. A claim for defamation must be specifically pled. *Ledl v Quik Pik Food Stores, Inc*, 133 Mich App 583, 589; 349 NW2d 529 (1984). "The essentials of a cause of action for libel or slander must be stated in the complaint, including allegations as to the particular defamatory words complained of, the connection of the defamatory words with the plaintiff where such words are not clear or are ambiguous, and the publication of the alleged defamatory words." *Id*., quoting *Pursell v Wolverine-Pentronix, Inc*, 44 Mich App 416, 421; 205 NW2d 504 (1973).

Mendoza next argues the claim fails because the allegedly defamatory statements are not provable as false, but rather, statements of her subjective feelings or opinions. A statement must be "provable as false" to be actionable. See *Ireland v Edwards*, 230 Mich App 607, 616; 584 NW2d 632 (1998). Expressions of opinion are protected from defamation actions. *Hodgins v Times Herald Co*, 169 Mich App 245, 253; 425 NW2d 522 (1988), citing *Gertz v Robert Welch, Inc*, 418 US 323, 339; 94 S Ct 2997; 41 L Ed 2d 789 (1974).

Mendoza also asserts the statements were the truth. "[T]ruth is an absolute defense to a defamation claim." *Porter v City of Royal Oak*, 214 Mich App 478, 486; 542 NW2d 905 (1995). Furthermore, "the common law has never required defendants to prove that a publication is literally and absolutely accurate in every minute detail…[and] Michigan courts have traditionally followed this approach." *Rouch v Enquirer & News of Battle Creek Michigan (After Remand)*, 440 Mich 238, 258-259; 487 NW2d 205 (1992). Mendoza argues her statement about how she felt was the truth, and in fact, the District Court agreed that Hallman was "threatening and harassing" Mendoza, such that Hallman is estopped from asserting otherwise.

Hallman argues the statements are pleaded with the required specificity, they were not merely about Mendoza's feelings, and they are provable as false. The statements that Hallman and his sister were "harassing her" and "threatening to come to her office" are not merely about how she felt; they are statements about Hallman's actions. Further, the omission of key facts can make a statement actionable as defamation. See *Locricchio v Evening News Ass'n*, 438 Mich 84, 123; 476 NW2d 112 (1991) (noting that Michigan courts "have held that a cause of action exists for defamation by implication"); *Hawkins v Mercy Health Servs, Inc*, 230 Mich App 315, 329; 583 NW2d 725 (1998) (in a claim for defamation by implication, plaintiff must provide the implications are materially false). For instance, Mendoza failed to explain that Hallman was trying to obtain his records pursuant to HIPAA and that she had denied his request and initiated contact with Hallman on multiple occasions. Mendoza's omission of key facts rendered the implications materially false.

16

The Court finds that Hallman has pleaded defamation with the required specificity. He has cited the exact words as contained in Mendoza's own file notes of March 1, 2019, wherein she stated that Hallman and his sister were "harassing me in an attempt to intimidate me to provide a clinical recommendation…." Complaint, ¶¶ 52-53. The statements are provable as false, and they are not merely expressions of Mendoza's feelings or opinions. She told the probation office that Hallman was harassing her. This is a statement about Hallman's actions, not her feelings. Direct accusations or inferences of criminal conduct or wrongdoing are not protected as opinion. *Hodgins*, 169 Mich App at 253-254, citing *Church of Scientology of California v Flynn*, 744 F2d 694, 698 (CA 9, 1984). There is no First Amendment protection for "a charge which could reasonably be understood as imputing specific criminal conduct or other wrongful acts." *Hodgins*, 169 Mich App at 254 (citation omitted). Regarding Mendoza's argument that the statements were true or substantially true, the Court finds this is a question for the jury to decide. See *Locricchio,* 438 Mich at 137 (Cavanagh, J., concurring) (the Michigan Supreme Court has "consistently viewed the determination of truth or falsity in defamation cases as a purely factual question which should generally be left to the jury."); *Ireland*, 230 Mich App at 621-622 (summary disposition not appropriate where genuine issue of fact existed as to whether statements were false).

The Court also agrees with Hallman that his complaint alleges defamation per se. Michigan's defamation statute, MCL 600.2911, provides in pertinent part:

> (1) Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as *the uttering or publishing of words imputing the commission of a criminal offense.* [emphasis added]

17

At common law, words charging the commission of a crime are defamatory per se, and hence, injury to the reputation of the person defamed is presumed to the extent that the failure to prove damages is not a ground for dismissal. *Sias v Gen Motors Corp*, 372 Mich 542, 551; 127 NW2d 357 (1964); *Peoples v Detroit Post & Tribune Co*, 54 Mich 457; 20 NW 528 (1884); *Wilkerson v Carlo,* 101 Mich App 629, 632; 300 NW2d 658 (1980). Where defamation per se has occurred, the person defamed is entitled to recover general damages in at least a nominal amount. *Slater v Walter*, 148 Mich 650, 652–653; 112 NW 682 (1907); *Scougale v Sweet,* 124 Mich 311, 323, 325; 82 NW 1061 (1900); *Sias,* 372 Mich at 551–552.

Here, Mendoza's statements do not specifically accuse Hallman of the felony of aggravated stalking, MCL 750.411i, but they do allege the elements of such a crime. It appears that allegations of the elements of the crime, without naming the crime itself, are sufficient to state a claim for defamation per se. See, e.g., *Redmond v Heller*, __ Mich App __; __ NW2d __ (2020) (statements that employee of funeral home "'hunts' and 'targets' young boys for sexual purposes" and sodomized customers of the funeral home constituted defamation per se); *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723; 613 NW2d 378 (2000) (statements that plaintiffs had failed to pay for their meals in a restaurant were sufficient to state a claim for defamation per se).

WHEREFORE, IT IS HEREBY ORDERED that Defendants' motion for summary disposition is DENIED.

IT IS SO ORDERED.

*Phyllis McMillen*
Phyllis C. McMillen, Circuit Judge

18