UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA HALLMAN,

   Plaintiff,

v.         Case No. 2:25-cv-10939-BRM-KGA
           Hon. Brandy R. McMillion

Hon. TRAVIS REEDS, in his official capacity as
Chief Judge of Michigan's 52nd District Court;
Hon. LISA L. ASADOORIAN, in her official
capacity as a judge of the third division of
Michigan's 52nd District Court; and Hon.
JEFFERY S. MATIS, in his official capacity as
Chief Judge of Michigan's Sixth Circuit Court,

   Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

  Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants request the Court to dismiss Plaintiff's Complaint for the following reasons:

  1. Plaintiff was denied access to and copying of video and audio recordings of court proceedings pursuant to Local Administrative Orders required to be adopted by a Michigan court rule.

  2. Plaintiff fails to state a claim because there is no First Amendment right to access or copy video or audio recordings of court proceedings.

3.     The common law right of access to court records does not include video or audio recordings of court proceedings because they are not judicial records.

4.     There is no basis to invalidate the Michigan court rule or the Local Administrative Orders.  Rather, this is a public policy issue.  Despite Plaintiff's efforts with the public policy makers – the Michigan Legislature, Michigan Supreme Court, and Oakland County Board of Commissioners – they have all declined her invitation.

5.     The Court should also abstain from exercising jurisdiction pursuant to *Burford v. Sun Oil*, 319 U.S. 315 (1943) and *Younger v. Harris*, 401 U.S. 37 (1971) since this is a matter of state court policy.

6.     Defendants have sought concurrence in this motion from Plaintiff on May 28, 2025 and it was denied.

**WHEREFORE,** Defendants request the Court to dismiss the Complaint with prejudice.

GIARMARCO, MULLINS & HORTON, P.C.

By: /s/ William H. Horton
**WILLIAM H. HORTON** (P31567)
**JOHN R. FLEMING** (P79748)
Attorneys for Defendant
101 West Big Beaver Road, Tenth Floor
Troy, Michigan 48084-5280

2

(248) 457-7000
bhorton@gmhlaw.com
jfleming@gmhlaw.com

Date:  June 5, 2025

<u>LOCAL RULE CERTIFICATION</u>

I, William H. Horton, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

/s/ William H. Horton
WILLIAM H. HORTON (P31567)

<u>CERTIFICATE OF SERVICE</u>

On June 5, 2025, I certify that I electronically filed this document with the

Clerk of the Court through the ECF System, which will send notice of such

electronic filing to all counsel of record registered electronically.

/s/ William H. Horton
WILLIAM H. HORTON (P31567)
Attorney for Defendant
bhorton@gmhlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA HALLMAN,

      Plaintiff,

                                    Case No. 2:25-cv-10939-BRM-KGA

v.                                Hon. Brandy R. McMillion

Hon. TRAVIS REEDS, in his official capacity as
Chief Judge of Michigan's 52nd District Court;
Hon. LISA L. ASADOORIAN, in her official
capacity as a judge of the third division of
Michigan's 52nd District Court; and Hon.
JEFFERY S. MATIS, in his official capacity as
Chief Judge of Michigan's Sixth Circuit Court,

      Defendants.

---

## DEFENDANTS' BRIEF RE: MOTION TO DISMISS

---

## <u>TABLE OF CONTENTS</u>

Page No.

INDEX OF AUTHORITIES ............................................................................. iii

STATEMENT OF THE ISSUES PRESENTED ...................................................... v

CONTROLLING AUTHORITY.................................................................... vi

SUMMARY OF THE ARGUMENT ................................................................vii

FACTS ...........................................................................................................1

STANDARD FOR DECISION ........................................................................4

REQUESTED RELIEF ..................................................................................23

CERTIFICATE OF SERVICE ........................................................................24

## INDEX OF AUTHORITIES

Page No.

### Cases

*AFT Michigan v. Project Veritas*, 2023 WL 2890152, at *4 (E.D. Mich. Apr. 10, 2023) ........................................................................................20

*Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)...........................15

*Apple iPod iTunes Litigation*, 76 F. Supp. 3d 1271(N.D. Cal. 2014) .......14, 15

*Bradford v. Johnson*, 354 F. Supp. 1331, 1337 (E.D. Mich. 1972) ...............19

*Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943)......................................21

*California v. Ramos*, 463 U.S. 992, 1014 (1983) ..........................................7

*Com. v. Winfield*, 464 Mass. 672, 683–84 (2013) .....................................18

*Disability Rts. New York v. New York,* 916 F.3d 129, 136 (2d Cir. 2019) ......21

*Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124 (1978) ...............23

*Fisher v. King*, 232 F.3d 391 (4th Cir. 2000)...............................................11

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982).................5, 7

*Hollingsworth v. Perry*, 558 U.S. 183 (2010) .............................................22

*In re NBC Universal, Inc.*, 426 F. Supp. 2d 49 (E.D.N.Y. 2006)....................12

*In re Sony BMG Music Entertainment*, 564 F.3d 1, 9 (1st Cir. 2009) ...............9

*Kohls v. Ellison*, 2025 WL 66765, at *1 (D. Minn. Jan. 10, 2025) ................20

*Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).....................................4

*Mirlis v. Greer*, 952 F.3d 51, 58 (2nd Cir. 2020) ...................................15, 16

*New England Health Care Employees Pension Fund v. Ernst & Young*, 336 F.3d 495, 501 (6th Cir. 2003) ..........................................................5

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ......vi, 7, 11

*Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980) ..............................................21

*Pereida v. Wilkinson*, 592 U.S. 224, 241 (2021) ..........................................7

*SEC v. American International Group*, 712 F.3d 3-4 (D.C. Cir. 2013)...........15

*Smith v. United States District Court*, 956 F.2d 647, 650 (7th Cir. 1992) ........13

*United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986) ............................vi, 9

*United States v. Boyd*, 2008 WL 2437725 (E.D. Tenn. June 13, 2008) .........12

*United States v. Bruno*, 700 F. Supp. 2d 175, 182 (N.D.N.Y. 2010) .............19

*United States v. Dimora*, 2015 WL 644886 (N.D. Ohio Oct. 23, 2015)........12

*United States v. El-Sayegh*, 131 F. 3d 158, 163 (D.C. Cir. 1997)................15

*United States v. Khan*, 591 F Supp. 2d 166, 169 (E.D.N.Y. 2008)...............18

*United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996) ......................11, 13

*Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1377 (8th Cir. 1990) ................................................................................12

*Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir. 1997) .............................5

*Westmoreland v. Columbia Broad. Sys. Inc.*, 752 F.2d 16 (2nd Cir. 1984)........9

*Whole Woman's Health v. Jackson*, 595 U.S. 20, 39 (2021)........................21

*Younger v. Harris*, 410 U.S. 37 (1971)....................................................21

## Statutes

42 U.S.C. §1983 ....................................................................................4

## Other Authorities

May, *Public Access to Civil Court Records:  A Common Law Approach*, 39 Vanderbilt L. Rev. 1465, 1493 (1986)................................................10

## Rules

Federal Rule of Criminal Procedure 53.....................................................22

M.C.R. 7.201(A)(1) ...............................................................................15

M.C.R. 8.119(H)(8)(b) ........................................................................2, 13

## STATEMENT OF THE ISSUES PRESENTED

1. Does Plaintiff have a First Amendment right to access and copy these unofficial recordings?

2. Does Plaintiff have a common law right to access and copy these unofficial recordings?

## CONTROLLING AUTHORITY

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978).

*United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986).

## SUMMARY OF THE ARGUMENT

The First Amendment to the Constitution does not provide a right to access judicial records.  Plaintiff has failed to state a claim.

There is a limited common law right to access judicial records.  Judicial records are items that are involved in the adjudicative process.  The audio and video recordings at issue in this case were not involved in the adjudicative process and are not judicial records.  Plaintiff has failed to state a claim under the common law.

Whether these kinds of recordings should be publicly available and under what circumstances is a question of public policy to be determined by the public policy makers, not this Court.  The Michigan Court Rule, which gives local courts discretion to make choices regarding access to and copying of court recordings, is a valid exercise of the Michigan Supreme Court's policy making authority.

## FACTS

In 2018, Plaintiff's brother, Richard Hallman, entered a guilty plea in the 52-3 (Michigan) District Court to a misdemeanor offense of possession of marijuana.  Complaint, ¶24 (ECF No.1, PageID.11).  His guilty plea was held in abeyance pending completion of substance abuse counseling.  Richard engaged a counselor, but the counselor failed to provide the Court with evidence that Richard had attended the counseling.  As a result, Richard was properly issued a notice of violation of the terms of his probation.  *Id.* ¶¶24-25.

A hearing was held on March 5, 2019.  Plaintiff alleges Judge Asadoorian was rude to Richard and would not let him show her text messages and emails between Richard and the counselor.  Richard pled guilty to the violation and Judge Asadoorian subsequently revoked Richard's deferred sentence and entered the guilty plea.  *Id.* ¶¶26-27.  A transcript of the hearing is attached as Exhibit A. Richard did not appeal.

Later, Plaintiff hired a lawyer for Richard to sue the counselor, which he did, in Oakland County Circuit Court.  During that case, Richard issued a subpoena to the District Court to obtain the audio recording of the probation violation hearing.  The District Court moved to quash the subpoena based on the District Court's Local Administrative Order.  The Circuit Court granted the motion.  *Id.*

1

¶¶29-30.  That order was not appealed.  The case was subsequently settled.  *Id*.

¶¶32-33.[1]

Later still, on April 4, 2022, Plaintiff emailed Judge Asadoorian, requesting

a copy of the video and audio recording of Richard's probation violation hearing.

Judge Asadoorian did not respond.   Instead, the District Court Administrator

emailed Plaintiff, stating 1) there is no video recording of the hearing, and 2) the

audio recording is not a public record pursuant to the Local Administrative Order,

which she attached.  *Id*. ¶¶36-37 and Exhibit 2 to the Complaint.

The Local Administrative Order is clear.  Paragraphs 7 and 8 state:

> 7.  Access to court recordings, log notes, jury seating
> charges, and other media of court proceedings made
> pursuant to M.C.R. 8.108 is not permitted.
>
> 8.  Copies of court recordings, log notes, jury seating
> charges, and other media of court proceedings made
> pursuant to M.C.R. 8.108 are not available.

(Emphasis added).   A copy of the District Court Local Administrative Order is

attached as Exhibit B.[2]

---

[1] Although commonly referred to as Oakland County Circuit Court, the official name of the Court is the Sixth Judicial Circuit Court.

[2] The LAO is required to be established pursuant to M.C.R. 8.119(H)(8):  "Every court shall adopt an administrative order … to establish a policy for whether to provide access for records defined in subrule (F) and if access is to be provided, outline the procedure for accessing those records."

2

Also on April 4, 2022, Plaintiff sought to obtain the video recording of the Circuit Court hearing on the District Court's motion to quash the subpoena. Plaintiff was provided with a link to view the video by the Court's Data Technology Unit.  *Id*. ¶40.  She then emailed Judge Phyllis McMillen of the Circuit Court seeking a copy of the video recording which she stated she intended to modify and publish.  Judge McMillen denied the request.  Copies of the emails are attached to the Complaint at Exhibit 3.  The Circuit Court Local Administrative Order is attached as Exhibit C.

Also in 2022, Plaintiff sought video recordings of three other Oakland Circuit Court judges who were up for reelection.  She was permitted to view them. *Id*. ¶46.  She later requested video recordings from every judge running for re-election in Oakland Circuit.  She was given a room at the courthouse to do so. *Id*. ¶48.

Plaintiff asserts she is an activist who wants to obtain recordings of judges so she can publicize them and inform voters about the candidates.  *Id*. ¶¶58-59. She has advocated for such a rule before the Oakland County Board of Commissioners, *id*. ¶51, been interviewed by the Detroit Free Press, *id*. ¶52, advocated to the Oakland County Circuit Court, *id*. ¶53, written to state legislators, sought the support of the State Bar of Michigan and testified at a

public administrative hearing before the Michigan Supreme Court, *id*. ¶54. Plaintiff alleges, in her opinion, that there are good reasons as to why video and audio recordings should be available. *Id*. ¶¶60-72.

Count I of the Complaint, brought under 42 U.S.C. §1983, alleges the District Court LAO prohibiting access to and copying of court recordings violates the First Amendment. *Id*. ¶77. Count II, also a §1983 claim, acknowledges that the Circuit Court LAO provides that video recordings are "available to the public for viewing" but there is "a presumption that such videos may not be copied and disseminated." *Id*. ¶83. Thus, according to Plaintiff, this is an improper prior restraint of the First Amendment.

Plaintiff seeks a declaration that the properly adopted local administrative orders of the District Court and the Circuit Court violate the First Amendment. *Id*. ¶88. In addition, she seeks an order requiring the District Court and the Circuit Court to provide her with copies of the recordings she requested. *Id*. Moreover, she asks the Court to enjoin enforcement of the LAOs. *Id*. ¶89.

## STANDARD FOR DECISION

A Rule 12(b)(6) motion tests the legal sufficiency of the claim, accepting all well-pleaded facts as true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court may consider documents attached to this motion which were referred

4

to, but not attached to, the Complaint.  *Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir. 1997).  In addition, the Court may take judicial notice of public records.  *New England Health Care Employees Pension Fund v. Ernst & Young*, 336 F.3d 495, 501 (6th Cir. 2003).

## ARGUMENT

Plaintiff claims that access to and dissemination of recordings of court proceedings is good public policy.  However, that opinion has been rejected by Michigan's policy making bodies – the Legislature, the Supreme Court, and the Oakland County Board of Commissioners.  The problem with Plaintiff's legal premise is that there is no First Amendment right to access these recordings.

It should first be mentioned what this case is not.  It is not a case about access to a trial or hearing.  Numerous cases hold that the public has a right to attend trials and hearings.  *E.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982).  Plaintiff does not claim she was denied access to the courtroom.

Nor is this a case where Plaintiff was not allowed to find out what happened in the courtroom.  She does not deny that the transcript is the official record of her brother's probation violation hearing and that she has a copy.  *See* Complaint, ¶26 (quoting Judge Asadoorian).  She apparently was in the circuit

courtroom when there was a hearing on the District Court's motion to quash the subpoena. *Id*. ¶38 (discussing the motion to quash hearing).

Plaintiff does not claim the recordings were evidence considered by either Judge Asadoorian in the District Court or Judge McMillen in the Circuit Court. *See id*. ¶28 (acknowledging her brother voluntarily pleaded guilty); ¶32 (Judge McMillen apparently reviewed the transcript in denying the defendant's summary disposition motion resulting in a settlement "for a significant sum").

Instead, this is a case where Plaintiff claims the Michigan public policy is wrong and she wants to change it – something she is certainly entitled to do with the bodies that make public policy.  She has tried that approach and failed. She was apparently able to convince some Michigan Senators to introduce Senate Bill No. 257 of 2023, a copy of which is attached as Exhibit D. *Id*.  ¶54. That bill proposed to require video recordings of all court proceedings to be publicly available:

> If a court makes a video recording of a public court
> proceeding, the court shall make the recording available
> for public access as required by this section.

The bill died in committee and has never been re-introduced.

Plaintiff also requested the Circuit Court Chief Judge to change the LAO. It was considered and denied.  A copy of that request is attached as Exhibit E.

She also appeared before the Oakland County Board of Commissioners on this issue, without success.

Instead, after Plaintiff failed in her attempts to persuade the public policy makers, she filed this lawsuit. But judges are not substitutes for the public policy makers. "We sit as judges, not legislators…." *California v. Ramos*, 463 U.S. 992, 1014 (1983).

> It is hardly this Court's place to pick and choose among competing policy arguments … selecting whatever outcome seems to us most congenial, efficient, or fair. Our license to interpret statutes [and the Constitution] does not include the power to engage in such freewheeling judicial policymaking.

*Pereida v. Wilkinson*, 592 U.S. 224, 241 (2021).

1. No First Amendment Right to Access These Recordings.

While the Supreme Court has recognized a First Amendment right to attend trials, *Globe Newspapers, supra* at 603-04, the Court has never declared a First Amendment right to access court records. Perhaps the most famous and applicable case is *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). That case involved the Oval Office audio tapes made by former President Richard Nixon confirming his involvement in the Watergate criminal break-in. Nixon's agents had been prosecuted, the tapes had been admitted into evidence, were played in the courtroom, and transcripts were made and published.

7

But various media outlets sought copies of the tapes themselves.  The district court denied the request.  The Court of Appeals reversed, commenting that there were First Amendment implications.  The Supreme Court reversed the Court of Appeals, reinstated the order of the district court, and ordered the media's application to release the tapes to be dismissed.

In discussing whether the media and the public had a right to the actual tapes, the Supreme Court's only mention of the First Amendment was to state it was inapplicable.  The Court stated:

> Respondents argue that release of the tapes is required by both the First Amendment guarantee of freedom of the press and the Sixth Amendment guarantee of a public trial.  <u>Neither supports respondents' conclusion</u>.

*Id*. at 610 (emphasis added).

In further rejecting the argument made there (and by Plaintiff here), the Court rejected the idea that listening to "inflection and emphasis" on the tapes changed the analysis.  The Court stated:

> [T]his argument proves too much.  The same could be said of the testimony of a live witness, yet there is <u>no constitutional right to have such testimony recorded and broadcast</u>.

*Id*. at 608 (emphasis added).

8

Later, the Second Circuit reiterated that there is no First Amendment right to broadcast a trial.  In *Westmoreland v. Columbia Broad. Sys. Inc.*, 752 F.2d 16 (2nd Cir. 1984), CNN sought to broadcast the libel trial of former Army General Westmoreland against television network CBS, citing the First Amendment.  The district court denied the request and the Second Circuit affirmed.  "[T]he public interest in television access to the courtroom does not now lie within the First Amendment." *Id.* at 24.

> There is a long leap, however, between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised.  It is a leap that is not supported by history.

*Id*. at 23.

No such right exists regardless of whether it is the legacy media or the internet.  In *In re Sony BMG Music Entertainment*, 564 F.3d 1, 9 (1st Cir. 2009), the First Circuit denied a request to stream a trial on the internet:

> While new technology characteristic of the Information Age may call for the replotting of some boundaries, the venerable right of members of the public to attend federal court proceedings is far removed from an imagined entitlement to view court proceedings remotely on a computer screen.

In case there was any confusion as to whether the First Amendment applied to these kinds of court records, the Sixth Circuit put the argument to rest.  In *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986), the media asked for copies of

the video recordings of the defendants accepting bribes.  The videos had been

admitted into evidence.  The tapes were played in open court and transcripts were

provided.  The district court denied the request.

The Court of Appeals stated that *Nixon v. Warner Communications* was

clear there is no constitutional right to access recordings of this kind:

> Applying the Court's reasoning in *Warner Communications* to the present appeal, we find that there was no obstruction of the free flow of information. There were no restrictions on media access to the trial or on the publication of information in the public domain. The Constitution requires that members of the public and the media have the opportunity to attend criminal trials and to report what they have observed.  As in *Warner Communications*, "[t]hat opportunity abundantly existed here." <u>If a right to copy the tapes and transcripts in this case exists, it must come from a source other than the Constitution</u>.

*Id*. at 409 (emphasis added, citations omitted).

Commentators have likewise agreed:

> [E]xtrapolating a constitutional right of access [to records] from *Warner Communications* misinterprets the opinion. <u>The Supreme Court did not even hint that a constitutional right of access exists</u>. On the contrary, the Court gave every indication that the common law presumption in favor of access is not of constitutional magnitude.

May, *Public Access to Civil Court Records:  A Common Law Approach*, 39

Vanderbilt L. Rev. 1465, 1493 (1986) (emphasis added).

10

The Fourth and Eighth Circuits are equally clear.  In *Fisher v. King*, 232 F.3d 391 (4th Cir. 2000), the court considered whether the First Amendment required the release of an audio recording of a 911 call introduced at trial:

> The precise question presented by Fisher's as-applied challenge, however, is whether the First Amendment provides him, as a member of the general public, a right of physical access to an audio tape that was played in open court in a criminal trial, admitted into evidence, and for which he possesses a complete verbatim transcript.
>
> Under the Supreme Court's decision in Nixon v. Warner Communications, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the answer to this question is no. Of relevance here, in *Nixon*, certain members of the press argued that the First Amendment's guarantee of freedom of the press required the District Court for the District of Columbia to release to them for copying certain audio tapes that had been admitted into evidence during the criminal trial of several former advisors to President Richard Milhous Nixon. The Supreme Court flatly rejected this argument, holding that, under the circumstances, the First Amendment did not provide the general public a right of physical access to the tapes, and the press generally has no greater right to information about a trial superior to that of the general public.

*Fisher v. King*, 232 F.3d 391, 396 (4th Cir. 2000) (emphasis added).

In *United States v. McDougal*, 103 F.3d 651 (8th Cir. 1996), former President Clinton was deposed by video.  The video was played at the trial and a transcript was made public.  Various media outlets petitioned the district court to

11

obtain a copy of the video.  The district court denied the request and the Eighth

Circuit affirmed.  The Court held the First Amendment did not apply:

> Upon de novo review, <u>we also agree, as a matter of law, with the district court's holding that the First Amendment right of access to public information does not extend to the videotape</u> of President Clinton's deposition testimony. As the district court noted, members of the public, including the press, were given access to the information contained in the videotape. Therefore, appellants received all the information to which they were entitled under the First Amendment.

*Id.* at 659 (emphasis added).

Courts across the country agree:

- "The Constitution does not give the public or the media the right of physical access to tapes and transcripts of what takes place during trial." *United States v. Boyd*, 2008 WL 2437725 (E.D. Tenn. June 13, 2008) at *1.

- "The Supreme Court never has found a First Amendment right of access to civil proceedings or to the court file in a civil proceeding." *Webster Groves School Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1377 (8th Cir. 1990).

- "[T]here is no constitutional right to inspect and copy those exhibits…" *United States v. Dimora*, 2015 WL 644886 (N.D. Ohio Oct. 23, 2015) at *2.

- "The common law right of access to courtroom exhibits is not derived from the Constitution…." *In re NBC Universal, Inc.*, 426 F. Supp. 2d 49 (E.D.N.Y. 2006).

Simply put, the Michigan Supreme Court has made a policy decision in adopting M.C.R. 8.119 to which the First Amendment does not apply. There is no basis to invalidate the Michigan court rule (and the LAOs) since there is no First Amendment right for access to audio and video recordings. Since Plaintiff's Complaint only alleges a First Amendment right, the Complaint fails to state a claim.

2. <u>There is No Common Law Right to These Recordings</u>.

Defendants recognize there is a limited common law right of access to judicial records and a simple amendment to the Complaint would bring the case back before the Court on that basis. In that regard, the threshold inquiry is whether the District Court and Circuit Court recordings constitute a "judicial record."

The answer is no. Judicial records are those which play a part in the adjudicative process, *i.e.*, those "materials on which a court relied in determining the litigants' substantive rights." *Smith v. United States District Court*, 956 F.2d 647, 650 (7th Cir. 1992).

Recordings, even those played at a trial or entered into evidence, are not judicial records. For example, in *McDougal, supra*, the case involving the video deposition of former President Clinton, the Eighth Circuit stated: "To begin, <u>we</u>

hold as a matter of law that the videotape itself is not a judicial record to which the common law right of public access attaches."  103 F.3d at 656 (emphasis added).

In *Apple iPod iTunes Litigation*, 76 F. Supp. 3d 1271(N.D. Cal. 2014), Steve Jobs, the CEO of Apple, had been deposed by video, he subsequently died and the video deposition was played at trial.  Various media outlets petitioned the court for a copy of the video.  The district court denied the request because the video was not a judicial record:

> Here, the Court agrees with the Eighth Circuit and concludes that the Jobs Deposition is not a judicial record. It was not admitted into evidence as an exhibit. Instead, the Jobs Deposition was merely presented in lieu of live testimony due to the witness's unavailability, and was and should be treated in the same manner as any other live testimony offered at trial. As is typical of all live testimony, it is properly made available to the public through its initial courtroom presentation and, subsequently, via the official court transcript, the latter of which is the judicial record of such testimony. Said differently, the docket, transcript, and exhibits are the court's official "record" of the trial, "record" being defined, in part, as "[t]he official report of the proceedings in a case, including the filed papers, a verbatim transcript of the trial or hearing (if any), and tangible exhibits." Black's Law Dictionary 1279 (7th ed. 1999).

*Id*. at 1275 (N.D. Cal. 2014) (emphasis added).

Again, courts around the country agree:

14

- In denying access to a video deposition played at trial: "[A] judicial document is one that has been placed before the court by the parties and is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Mirlis v. Greer*, 952 F.3d 51, 58 (2nd Cir. 2020).

- In denying access to a report submitted to the court but not considered in its ruling: "The IC reports are not judicial records subject to the right of access because the district court made no decisions about them or that otherwise relied on them." *SEC v. American International Group*, 712 F.3d 3-4 (D.C. Cir. 2013).

- The common law right to access has not been "extended beyond materials on which a court relies in determining the litigants' substantive rights." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986).

- Withdrawn plea agreement was not a judicial record because it "played no role in any adjudicatory function." *United States v. El-Sayegh*, 131 F. 3d 158, 163 (D.C. Cir. 1997).

Here, neither recording played any role in the adjudicative process. The transcript is the "official report of the proceedings in the case." *Apple iPod, supra*. *Accord*: M.C.R. 7.201(A)(1) (the official record on appeal is "the transcript of any testimony or other proceedings"). The recordings played "no role in any adjudicatory function." *United States v. El-Sayegh, supra*. Plaintiff has copies of the transcripts which she is free to disseminate but she is not entitled to the recording.

15

Plaintiff's Complaint does not assert she was excluded from the courtroom or that she did not obtain an accurate record of what occurred in the courtroom or that the recordings played any role in adjudication.  Instead, she does not like the form in which the record of the courtroom proceedings was delivered.  That claim invokes neither a First Amendment or common law right.

With no First Amendment or common law right to the recordings, it falls on the policy making bodies to answer the question.  Sound public policy reasons exist to prohibit the distribution of recordings.

For example, in *Mirlis v. Greer, supra*, a third-party witness had been video deposed about the sexual assault he had suffered at the hands of the defendant. A non-party petitioned the court to obtain a copy of this video.  The court refused to release the video – noting the privacy concerns in the age of the internet – stating:

> The astonishing and pervasive rise of the Internet; the attendant ease with which videos may be shared worldwide by individuals; and the eternal digital life with which those videos are likely endowed by even a single display online. These are all factors that multiply and intensify the privacy costs to the individual of releasing sensitive videos; those costs are undeniably greater than what they might have been 30 years ago. Whereas the subject of a video deposition made public in 1987 may have suffered brief notoriety and embarrassment as the subject of an evening's newscast, today, Hack could reasonably fear that, for the rest of his life, this video

16

<u>would be the first result of an internet search for his name</u>. Given the proliferation of smartphones and improved digital streaming capabilities, he could also reasonably expect, as a schoolteacher and father, that his students and his children would view the video not only at home, on family computers, but possibly also during (his) class, on their cell phones. <u>Common sense and over two decades of widespread and constant use of the Internet are sufficient to tell us that a video of a person describing details of his abuse is likely to garner more attention, be distributed more widely, and last longer in the public's attention than are copies of a transcript or even local news articles</u>.

952 F.3d at 66 (emphasis added).

Similarly, the Supreme Judicial Court of Massachusetts upheld the lower court's denial of a request to release a video recording of a trial to a filmmaker who was making a documentary about the case. The case involved the rape and sexual assaults of minors. The court held that the risk of emotional distress was paramount.

We conclude that the judge did not abuse her discretion in weighing the risk of emotional distress to the victim and her family against Audette's interest in using the witnesses' actual voices in his documentary film and finding, in essence, that the interests of justice would not be served by giving Audette access to the room recording of the testimony at trial. Where Audette already had the transcript of the trial, and where release of the room recording posed a material risk of emotional distress to the victim and her family in this extraordinary case, the judge's decision to deny release of the recording was not an abuse of discretion.

*Com. v. Winfield*, 464 Mass. 672, 683–84 (2013).

This concern is common and justified.  For example, Defendant Chief Judge Matis recently presided over the case of a 9-year-old girl abducted and repeatedly raped.  Those proceedings should not be on the internet and follow her for the rest of her life.  The LAO advances the overarching need of protecting victims.

Consider also the need for the court to protect jurors, victims and witnesses from intimidation, encourage candor and respect privacy concerns.  For example, during *voir dire* in criminal sexual conduct and domestic violence cases, one of the attorneys typically asks potential jurors if they have ever been such a victim – a fact which may never have been revealed before and may resurrect painful memories, yet the answer to the question is compelled by law.  Also, in the conduct of the case itself, victims and other witnesses must testify to personal and intimate facts.  These recordings should not be available for the world to see at the click of a button.

The Court is almost certainly aware that jurors, victims and witnesses are sometimes threatened with violence for their role in a case.  "Anonymous juries are empaneled in order to project jurors from harm, to address concerns of jurors regarding their safety, and to prevent potential jury tampering."  *United States v. Khan*, 591 F Supp. 2d 166, 169 (E.D.N.Y. 2008).  If a juror, victim or witness

knows a video of their testimony will be recorded for public dissemination, they may fear retribution and hesitate or refuse to testify truthfully or at all.  *United States v. Bruno*, 700 F. Supp. 2d 175, 182 (N.D.N.Y. 2010) (protecting privacy concerns "strengthens the integrity of our justice system by assuring their rights to safety and privacy"). The LAOs advance a fundamental duty of the court – to keep "witnesses and defendants free from violence and influence."  *Bradford v. Johnson*, 354 F. Supp. 1331, 1337 (E.D. Mich. 1972).

In addition, real-time access to court proceedings threatens the integrity of the judicial process.  For example, witnesses who are sequestered would be able to see and hear the testimony of other witnesses.

Moreover, these concerns are heightened by recent technological advances.  The risk of manipulation of the recordings is palpable.  As long ago as 1978, that potential was foreseen by the Supreme Court.  In *Nixon*, the Court stated:

> [If copied, there would be no] safeguard, other than the taste of the marketing medium, against distortion through cutting, erasing, and splicing of tapes.

435 U.S. at 601.

Today, the broadcast media and platforms such as YouTube are fundamentally different.  The broadcast media may be restrained from distorting

a video by the threat of potential liability.  No such thing is likely to restrain an almost anonymous author of a distorted video posted to YouTube.  And the YouTube video lasts forever.

The advent of social media, artificial intelligence, deep fakes, photoshop, and other audio and video manipulation tools puts this risk in the hands of anyone who has access to the internet.  As Judge Linda Parker in this District has stated: "Video recordings present particular concern due to the potential abuse that can arise from the possible editing of such media which could distort the original contents." *AFT Michigan v. Project Veritas*, 2023 WL 2890152, at *4 (E.D. Mich. Apr. 10, 2023).

Other courts agree:

> However, in the last 15 years, deepfake technology has become increasingly accessible and available, and ordinary people now can generate convincing deepfake content at little cost in a matter of minutes.  And with the concomitant rise of social media, deepfakes can be disseminated to millions of online users with the mere click of a button.

*Kohls v. Ellison*, 2025 WL 66765, at *1 (D. Minn. Jan. 10, 2025) (citations omitted).

Plaintiff tries to present her case as simply seeking copies of two recorded court hearings for political purposes.  But that is not her case.  Instead, Plaintiff

20

wants to invalidate the court rule adopted by the Michigan Supreme Court, the LAOs adopted pursuant to that rule and to enjoin their enforcement.  She says she wants to edit the recordings and disseminate them on the internet for political purposes, but such distortions would undermine the public trust and confidence in the court process.  The court rule and the LAOs either stand as written or fail.

There simply is no legal basis for a wholesale invalidation of the court rule and the LAOs.  "[T]his Court has no power to intervene in the internal procedures of the state courts and cannot legislate and engraft new procedures upon existing state … practices."  *Disability Rts. New York v. New York,* 916 F.3d 129, 136 (2d Cir. 2019) (cleaned up, citations omitted).  The Supreme Court has long held that federal courts should abstain from interfering in state policy making processes like the one at issue here. *Burford v. Sun Oil Co.,* 319 U.S. 315, 318 (1943) (federal courts should decline jurisdiction when the issue is one of the "rightful independence of state governments in carrying out their domestic policy"); *Younger v. Harris*, 410 U.S. 37 (1971) (federal courts should not interfere in state judicial processes).  And federal courts generally may not "issue injunctions against state-court judges or clerks."  *Whole Woman's Health v. Jackson*, 595 U.S. 20, 39 (2021).  *See also Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980) (federal

21

courts should apply *Younger* abstention regarding questions where "important state concerns" are present).

The fact that some Michigan courts release some videos and some courts do not simply reflects the policy choices of those courts.  It should be noted that federal courts, including the Courts of Appeal and the Supreme Court, do not allow video recordings of proceedings.  *See, e.g., Hollingsworth v. Perry*, 558 U.S. 183 (2010) (reversing order of district court allowing video broadcast); Federal Rule of Criminal Procedure 53 (prohibiting "the taking of photographs in the courtroom….").  These are legitimate policy choices made by those courts. If the Michigan court rule (and the LAOs adopted pursuant to it) are invalid, then it follows that so too are the rules of the federal courts prohibiting such recordings.

Plaintiff might advance some good public policy arguments for her position. Going forward, she may convince Michigan policy makers to adopt her views. Maybe not.  Such arguments have not gained traction in the Michigan Legislature. See Exhibit D.  Nor have they in Congress.  The proposed "Sunshine in the Courtroom Act of 2023," introduced in the Senate, died in committee. https://www.congress.gov/bill/119th-congress/senate-bill/1133/text/is?format =txt&overview=closed.  It was been proposed again in 2025, where it again languishes today.   https://www.congress.gov/bill/119th-congress/senate-

bill/1133.  This Court is simply not the proper forum for Plaintiff's quest to change public policy.

As the Supreme Court stated in *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124 (1978):  "The evidence presented by the [plaintiffs] may cast some doubt on the wisdom of the statute, but it is, by now, absolutely clear that the Due Process Clause does not empower the judiciary 'to sit as a superlegislature to weigh the wisdom of legislation.'"  So here too with the Michigan court rule and the LAOs.

<u>REQUESTED RELIEF</u>

Plaintiff's Complaint should be dismissed with prejudice.

GIARMARCO, MULLINS & HORTON, P.C.

By: <u>/s/ William H. Horton</u>
WILLIAM H. HORTON (P31567)
Attorney for Defendants
101 West Big Beaver Road, Tenth Floor
Troy, Michigan 48084-5280
(248) 457-7000
bhorton@gmhlaw.com

Date: June 5, 2025

<u>LOCAL RULE CERTIFICATION</u>

I, William H. Horton, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and

23

type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

/s/ William H. Horton
WILLIAM H. HORTON (P31567)

## CERTIFICATE OF SERVICE

On June 5, 2025, I certify that I electronically filed this document with the Clerk of the Court through the ECF System, which will send notice of such electronic filing to all counsel of record registered electronically

/s/ William H. Horton
WILLIAM H. HORTON (P31567)
Attorney for Defendants
bhorton@gmhlaw.com

24