# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| SAMANTHA HALLMAN, | Case No. 2:25-cv-10939-BRM-KGA |
| Plaintiff, | Hon. Brandy R. McMillion |
| v. | |
| Hon. TRAVIS REEDS, in his official capacity as Chief Judge of Michigan's 52nd District Court; Hon. LISA L. ASADOORIAN, in her official capacity as a judge of the third division of Michigan's 52nd District Court; and Hon. JEFFERY S. MATIS, in his official capacity as Chief Judge of Michigan's Sixth Circuit Court, | |
| Defendants. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS JUDGE ASADOORIAN

# TABLE OF CONTENTS

INDEX OF AUTHORITIES....................................................................... iii

CONCISE STATEMENT OF THE ISSUES PRESENTED....................................v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vi

INTRODUCTION ...................................................................................1

FACTUAL OVERVIEW ...........................................................................2

   I.   The District Court and the Circuit Court Both Maintain Policies that
Deny the Public Access to Recordings of Court Proceedings. ......................2

   II.  Plaintiff Is an Advocate for Judicial Transparency Who Was Denied
Access to Court Recordings Pursuant to Both the District Court and
Circuit Court Policies. .................................................................3

LEGAL STANDARD FOR A MOTION TO DISMISS.........................................7

ARGUMENT ........................................................................................8

   I.   Dr. Hallman Has Plausibly Alleged Judge Asadoorian's Involvement
in Denying Her Access to Court Records.............................................8

   II.  Judge Asadoorian Is Not Immune from This Suit.....................................14

       A.   Judges do not enjoy judicial immunity when acting in their
administrative capacity, and Defendants offer no argument she
was not acting in such a capacity at all relevant times. ........................14

       B.   Even if Judge Asadoorian were acting in her judicial capacity,
she still would not be immune from the declaratory relief sought
here.................................................................................15

CONCLUSION ......................................................................................17

# INDEX OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................9

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019) ............................ 10, 13

*Dill v. IBM*, No. 1:24-cv-852, 2025 WL 913744 (W.D. Mich. Mar. 26, 2025) ...................................................................................... 10, 13

*Doe v. DeWine*, 910 F.3d 842 (6th Cir. 2018) ....................................................9, 10

*Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223 (6th Cir. 2005) ................................8

*Ex parte Young*, 209 U.S. 123 (1908) ..............................................................9, 13

*Forrester v. White*, 484 U.S. 219 (1988) ...........................................................2, 15

*Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004) ...................................................8

*Mireles v. Waco*, 502 U.S. 9 (1991) ..............................................................15, 16, 17

*Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989) .............................................15

*Newman v. City of Humboldt*, No. 1:20-cv-01193-STA-jay, 2021 WL 2144330 (W.D. Tenn. May 26, 2021) ..................................................... 11, 13

*Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016) ............................ 10, 13

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) ..................... 9, 10, 13

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012) .....................................................16

*Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) ...................................................10

*Stern v. Mascio*, 262 F.3d 600 (6th Cir. 2001) ................................................ 16, 17

*Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022) ................................................................................... 9, 10, 13

*Ward v. City of Norwalk*, 640 F. App'x 462 (6th Cir. 2016) ....................... 2, 16, 17

## Statutes

42 U.S.C. § 1983 ...................................................................................... 2, 15, 16

**Other Authorities**

Code of Judicial Conduct, Canon 3(B)(1) ...............................................................12

Judicial Tenure Comm'n, *Annual Report 2024* (May 20, 2025)..................................5

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1. Plaintiff alleges that Judge Asadoorian enforced Michigan's 52nd District Court's policy of completely denying all public access to audio recordings of court proceedings, resulting in the denial of Plaintiff's request for audio recording of a court proceeding. Does the Complaint plausibly allege that Judge Asadoorian is a proper defendant in Plaintiff's suit for injunctive and declaratory relief?

   Plaintiff's answer:          Yes.

   Defendants' answer:          No.

2. Plaintiff sought injunctive and declaratory relief against Judge Asadoorian for actions undertaken in her administrative capacity, and her claims include a request for declaratory relief. Does Judge Asadoorian enjoy judicial immunity?

   Plaintiff's answer:          No.

   Defendants' answer:          Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- **Cause of Injury Issue:** *Ex parte Young*, 209 U.S. 123 (1908); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015); *Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016); *Doe v. DeWine*, 910 F.3d 842 (6th Cir. 2018); *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022).

- **Judicial Immunity Issue:** 42 U.S.C. § 1983; *Forrester v. White*, 484 U.S. 219 (1988); *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989); *Ward v. City of Norwalk*, 640 F. App'x 462 (6th Cir. 2016).

## INTRODUCTION

In this lawsuit, Plaintiff, Dr. Samantha Hallman ("Dr. Hallman"), challenges the constitutionality of Michigan's 52nd District Court ("the District Court") and Oakland Circuit Court's ("the Circuit Court's") policies that severely restrict Michiganders' access to taxpayer-funded audio and video recordings made of each court's proceedings. The Defendants are state court judges, and each is sued only in their official capacities seeking only declaratory and injunctive relief.

In Defendants' motion to dismiss Judge Asadoorian, they make two arguments.  First, they raise a factual discrepancy about Judge Asadoorian's role in enforcing the District Court's policy of completely denying all public access to audio recordings of court proceedings. Def. MTD, ¶3, ECF No. 14, PageID.82. Specifically, they argue that she had no role in enforcing the policy and that only a District Court clerk did so. This objection does not have merit. The Complaint plausibly alleges that Judge Asadoorian has a sufficient degree of involvement in enforcing the District Court policy.  Dr. Hallman pleaded that she directly requested an audio recording from Judge Asadoorian of a proceeding in Judge Asadoorian's courtroom. Judge Asadoorian forwarded the request to a court administrator either directing the administrator to deny Plaintiff's request or at the least knowing that the administrator would inform Plaintiff that her request was denied.

1

Second, Defendants assert in a throwaway argument that Judge Asadoorian is absolutely immune to the extent she is sued in her judicial capacity. Def. MTD, ¶5; Def. Br at 1, 7, ECF No. 14, PageID.82, 89, 95. This assertion is both irrelevant and, in any event, legally inaccurate. It is irrelevant because Dr. Hallman has alleged that Judge Asadoorian acted in her *administrative* capacity in denying Dr. Hallman's records request, not in her judicial capacity. Defendants offer no argument whatsoever to the contrary. State judges do not receive absolute immunity from actions undertaken in their administrative capacity. *Forrester v. White*, 484 U.S. 219, 227-29 (1988).

And it is legally inaccurate because, even if Judge Asadoorian were acting in her judicial capacity when she denied Plaintiff access to the District Court recording, she still would not be entirely immune from Plaintiff's claim for relief, as it is well established that declaratory relief is proper against a judge acting in her judicial capacity, and Dr. Hallman has requested such relief. 42 U.S.C. § 1983; *see Ward v. City of Norwalk*, 640 F. App'x 462, 464 (6th Cir. 2016).

## FACTUAL OVERVIEW

### I. The District Court and the Circuit Court Both Maintain Policies that Deny the Public Access to Recordings of Court Proceedings.

Many states, including every other state within the Sixth Circuit's jurisdiction, generally provide the public with access to audio and video recordings made of courtroom proceedings. Compl. ¶18, ECF No. 1, PageID.8. Michigan, however,

2

does not have a uniform statewide statute or court rule clearly addressing when the public is entitled to access, copy, or disseminate such recordings. Compl. ¶13, ECF No. 1, PageID.6. Instead, the Michigan Court Rule provides that every court must adopt its own policy regarding public access to court recordings. Compl. ¶14, ECF No. 1, PageID.6-7.

The District Court routinely creates audio recordings of its proceedings. Compl. ¶20, ECF No. 1, PageID.9. However, the District Court policy, articulated in its Administrative Order 2024-18, renders all audio or video recordings made by that court unavailable to the public. Compl. ¶19, ECF No. 1, PageID.8-9.

For its part, the Circuit Court has a policy, articulated in Administrative Order 2021-03, which allows the public to view court proceedings during normal business hours by advance request. Compl. ¶¶21-22, ECF No. 1, PageID.9-10. However, members of the public may not copy, disseminate, or share those recordings with other members of the public absent permission from a judge, who must identify "extraordinary circumstances" to allow dissemination. Compl. ¶¶21-22, ECF No. 1, PageID.9-10.

## II. Plaintiff Is an Advocate for Judicial Transparency Who Was Denied Access to Court Recordings Pursuant to Both the District Court and Circuit Court Policies.

Dr. Hallman has an extensive record of advocacy for judicial transparency and accountability, including communicating with the media, lobbying the Oakland

3

Circuit Court and state legislators, contributing to public comment and testimony, and being active in judicial elections. Compl. ¶¶50-57, ECF No. 1, PageID.22-25. Her requests for court recordings from the District Court and Circuit Court are part of her ongoing advocacy efforts. Compl. ¶¶28-49, ECF No. 1, PageID.13-22. Dr. Hallman recognizes that court recordings convey tone, demeanor, and the lived experience of how judges comport themselves in a way that court transcripts cannot. Compl. ¶35, ECF No. 1, PageID.15-16. Dr. Hallman also recognizes that video or audio recordings are more likely than court transcripts to be accessible to people with disabilities and to engage the public's attention, thus driving both policy reforms and interest in judicial elections. Compl. ¶¶35, 45, ECF No. 1, PageID.15-16, 19-20.

Dr. Hallman first requested a court recording from Judge Asadoorian, a District Court judge, following her brother's experience in Judge Asadoorian's courtroom. Compl. ¶¶24–37, ECF No. 1, PageID.11-16. In 2018, Dr. Hallman's brother ("Mr. Hallman") had entered a deferred guilty plea to a misdemeanor offense for possession of marijuana, which required him, *inter alia*, to seek substance abuse counseling and provide evidence to the District Court that he had done so. Compl. ¶24, ECF No. 1, PageID.11.  Mr. Hallman attended substance abuse counseling, but his counselor failed to provide confirmation of his attendance to his probation officer, causing him to receive a probation violation notice. Compl. ¶25, ECF No. 1,

4

PageID.11-12. Judge Asadoorian presided over Mr. Hallman's probation revocation hearing—a hearing that is not directly at issue in *this* lawsuit—during which she repeatedly told him to "shut his mouth" and would not allow him to present evidence of his counselor's negligence. [1] Compl. ¶26, ECF No. 1, PageID.12. Judge Asadoorian revoked Mr. Hallman's deferred plea status and sentenced him to community service. Compl. ¶27, ECF No. 1, PageID.12-13.

Following the probation revocation hearing, Mr. Hallman sued his former substance abuse counselor. Compl. ¶29, ECF No. 1, PageID.13-14. As part of the lawsuit, Mr. Hallman sought the audio recording of his probation revocation hearing from the District Court via a third-party subpoena to demonstrate the injury caused by the counselor's alleged misconduct. Compl. ¶29, ECF No. 1, PageID.13-14. The District Court moved to quash the third-party subpoena, which resulted in a motion hearing at the Circuit Court. Compl. ¶30, ECF No. 1, PageID.14. The Circuit Court granted the motion to quash, citing the District Court policy prohibiting public access to recordings. Compl. ¶30, ECF No. 1, PageID.14. The civil case later settled. Compl. ¶33, ECF No. 1, PageID.15.

---

[1] Since this lawsuit was filed, Michigan's Judicial Tenure Commission has issued a report, in which this incident, and others involving the same judge, are described. *See* Judicial Tenure Comm'n, *Annual Report 2024*, at 25-26 (May 20, 2025), *available at* https://tinyurl.com/rbm5y543. The report does not expressly name Judge Asadoorian but does describe this incident verbatim. The report also states that the judge in question was cautioned and required to attend anger management classes and undergo monitoring by the JTC.

On April 4, 2022, Dr. Hallman tried to obtain the audio recording of her brother's probation revocation hearing by requesting it directly via an email she sent to Judge Asadoorian. Compl. ¶¶34, 36, ECF No. 1, PageID.15-16. Dr. Hallman hoped publicizing the recording would encourage the public to hold Judge Asadoorian accountable for judicial misconduct and inspire another candidate to challenge her in the next election. Compl. ¶¶28, 34-36, ECF No. 1, PageID.13, 15-16. The District Court Administrator responded to Dr. Hallman's email the same day on Judge Asadoorian's behalf, denying her request pursuant to the District Court's policy. Compl. ¶37, ECF No. 1, PageID.16. The Court Administrator's email says, in relevant part, "Judge Asadoorian forwarded me your email . . . audio recordings are not public record pursuant to the attached Local Administrative Order." Compl. Ex. 2, ECF No. 1-3, PageID.60.

On April 4, 2022, Dr. Hallman also emailed a request to view the video that was made of her brother's motion-to-quash hearing to the Circuit Court. Compl. ¶40, ECF No. 1, PageID.17. A member of the Circuit Court's Data Technology Unit responded by emailing Dr. Hallman a link to view the hearing that expired within 72 hours. Compl. ¶40, ECF No. 1, PageID.17.

Because the Circuit Court policy prohibited editing or disseminating its court recordings without judicial permission, Dr. Hallman subsequently emailed the Circuit Court judge who presided over her brother's motion-to quash hearing,

requesting permission to disseminate the video publicly and to make alterations to protect her brother's identity and truncate the 20-minute video to the relevant parts only. Compl. ¶¶41-42, ECF No. 1, PageID.17-18. The Circuit Court judge denied Dr. Hallman's request. Compl. ¶44, ECF No. 1, PageID.19.

Dr. Hallman wanted to publicize the recording because she believed it shed light on how the District Court's policy conceals judicial misconduct. Compl. ¶43, ECF No. 1, PageID.18-19. Dr. Hallman hoped to encourage the public to advocate for greater judicial transparency. Compl. ¶39, ECF No. 1, PageID.17.  And, as a taxpayer, Dr. Hallman wanted to demonstrate to others how their tax dollars were being used not only to create records to which they are denied access, but also to pay counsel to defend such obfuscatory policies. Compl. ¶¶2-3, ECF No. 1, PageID.2-3.

Dr. Hallman subsequently sought other videos from the Circuit Court of three judges standing for re-election in 2022.  She was allowed to view some videos in person at the courthouse, but the Circuit Court refused to provide her with an email link to view them at home, and it would not allow her to copy or disseminate the videos to the voting public. Compl. ¶46, ECF No. 1, PageID.20.

Dr. Hallman intends to request recordings from the District and Circuit Courts in the future as part of her ongoing advocacy efforts. Compl. ¶58-59, ECF No. 1, PageID.25-26.

## LEGAL STANDARD FOR A MOTION TO DISMISS

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a pleading need only allege enough facts, taken as true, "to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The District Court should "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the pleader." *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). "Claims made pursuant to 42 U.S.C. § 1983 are not subject to heightened pleading standards." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

## ARGUMENT

### I.  Dr. Hallman Has Plausibly Alleged Judge Asadoorian's Involvement in Denying Her Access to Court Records.

Defendants ask the Court to dismiss Judge Asadoorian as a defendant, arguing that Judge Asadoorian did not make the decision to deny Dr. Hallman access to the recording of the hearing in which Judge Asadoorian berated Mr. Hallman and revoked his probation. That argument fails. Dr. Hallman has pleaded sufficient facts to raise a reasonable inference that Judge Asadoorian is sufficiently involved in denials of access to the recordings of her courtroom.

Allegations that raise a reasonable inference of wrongdoing by any particular defendant suffice to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts may use common sense and judicial experience to draw

8

reasonable inferences from pleaded facts. *See Iqbal*, 556 U.S. at 678-79. Plaintiff's allegations raise a reasonable inference of Judge Asadoorian's involvement in the denial of Dr. Hallman's request for recordings of proceedings in Judge Asadoorian's own court.

First, under *Ex parte Young*, a claimant seeking prospective relief may enjoin a state official to end an ongoing violation of federal law. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046-47 (6th Cir. 2015); *see also Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1040 (6th Cir. 2022); *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018). To be an appropriate defendant under *Ex parte Young*, the state official need only have "some connection with the enforcement" of the alleged unconstitutional act. *Ex parte Young*, 209 U.S. 123, 157 (1908). A state official's active involvement in administering an alleged unconstitutional policy that affects the claimant, including by providing direction to subordinates on how to administer the policy, establishes the official's connection to enforcement of the policy. *See Russell*, 784 F.3d at 1048 (state officials may be enjoined under *Ex parte Young* because they trained underlings on how to administer an alleged unconstitutional policy affecting the Plaintiff); *see also DeWine*, 910 F.3d at 849. A state official may be enjoined for enforcement of an alleged unconstitutional policy even when she acts pursuant to state authority because the state may not authorize unconstitutional actions. *Nabors*, 35 F.4th at 1041.

9

Further, even when (unlike here) financial liability is at issue in a § 1983 claim, a supervisor or higher official can be held responsible for another's unconstitutional conduct if they "encouraged . . . or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  In such cases, a plaintiff must plead that the higher official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Id.* (quoting *Shehee*, 199 F.3d at 300). Courts may reasonably infer that a named defendant engaged in wrongdoing by contributing to or directing a subordinate to apply unlawful policies. *See Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900–01 & n.6 (6th Cir. 2019) (supervisors properly liable for subordinates' actions when they instructed subordinates to conduct business as usual and apply policies that were allegedly unconstitutional);  *Dill v. IBM*, No. 1:24-cv-852, 2025 WL 913744 at *6-7 (W.D. Mich. Mar. 26, 2025) (allowing Plaintiff's claim against a company to survive a motion to dismiss based on the reasonable inference that the company knew and did nothing to stop alleged discriminatory termination of Plaintiff by his supervisor); *see also Newman v. City of Humboldt*, No. 1:20-cv-01193-STA-jay, 2021 WL 2144330, at *4 (W.D. Tenn. May 26, 2021) (allowing Plaintiff's claim against a school board member to survive a motion to dismiss after drawing the reasonable inference that the board member

10

implicitly authorized or approved of Plaintiff's discriminatory demotion by Plaintiff's supervisor).

Defendants argue in the motion to dismiss that Plaintiff fails to state a claim against Judge Asadoorian. Def. MTD, ¶4, ECF No. 14, PageID.82. The entirety of their argument is an assertion that Judge Asadoorian did not make the decision to deny Dr. Hallman access to the court recording; that assertion, in turn, is based on the fact that it was the court administrator, not Judge Asadoorian, who sent the email responding to Dr. Hallman's email to Judge Asadoorian requesting a copy of the audio recording from Judge Asadoorian's chambers. Def. MTD, ¶3, ECF No. 14, PageID.82.

The facts pleaded here easily establish a claim against Judge Asadoorian. The Complaint alleges that Judge Asadoorian acted in her administrative capacity to deny Dr. Hallman access to the District Court recording. Compl. ¶79, ECF No. 1, PageID.35. Plaintiff supports this allegation by stating that Dr. Hallman emailed Judge Asadoorian directly requesting the District Court recording, and the Court Administrator responded denying this request. Compl. ¶¶36-37, ECF No. 1, PageID.16. Plaintiff attached to the Complaint a copy of the Court Administrator's email, which says in part, "Judge Asadoorian forwarded me your email . . . " Compl. Ex. 2, ECF No. 1-3, PageID.60. The Complaint also alleges the Court Administrator denied Plaintiff access to the District Court recording pursuant to the District Court

11

policy, which the Court Administrator attached to the email. *Id.* Further, the email does not state that the Administrator is the one making the decision, but merely that the Administrator is the one sending the email because Judge Asadoorian "does not communicate directly with parties or interested parties to any past or current case." *Id.*

This Court may obviously use common sense and judicial experience to draw a reasonable inference that Judge Asadoorian is aware of her own court's policy prohibiting public access to court recordings.[2] Consequently, the pleaded facts present two options: 1) Judge Asadoorian directly instructed her Court Administrator to deny Dr. Hallman access to the District Court recording when she forwarded Dr. Hallman's email, or 2) by forwarding Dr. Hallman's email, Judge Asadoorian started a causal chain that she *knew* would result in the denial of distribution of the recording according to her own court's policies in the normal course of business.

Under either scenario, Judge Asadoorian is a proper defendant under *Ex parte Young* as a state official who has "some connection with the enforcement" of the unconstitutional District Court policy against distributing court recordings. *Ex parte Young*, 209 U.S. at 157. Although Judge Asadoorian did not herself create the

---

[2] The Michigan Code of Judicial Conduct Canon 3(B)(1) instructs judges to "diligently discharge administrative responsibilities." Code of Judicial Conduct, Canon 3(B)(1). The diligent discharge of administrative responsibilities implicitly requires a judge to be aware of the administrative rules of her own court.

District Court policy proscribing access to the recording, she may nonetheless be enjoined from enforcing it because the state cannot authorize unconstitutional acts, *Nabors*, 35 F.4th at 1041, and a supervisor is a proper defendant in an *Ex parte Young* suit when they have instructed a lower official to act knowing what they will do. *See Russell*, 784 F.3d at 1048 (supervisor liable where they have trained subordinate).

Indeed, Judge Asadoorian would be liable even under the higher standard that governs supervisory liability in damages suits. The Court may reasonably infer that Judge Asadoorian contributed to the Court Administrator's denial of Plaintiff's request in keeping with her own court's policy when she forwarded Dr. Hallman's email. *See Cahoo*, 912 F.3d at 900-01 & n.6; *see also Dill,* 2025 WL 913744 at *6-7; *see also Newman,* 2021 WL 2144330 at *4. Thus, she "at least implicitly authorized, approved, or knowingly acquiesced," *Peatross*, 818 F.3d at 242 (citation omitted), in the denial of Dr. Hallman's request.

Thus, regardless of whether Judge Asadoorian explicitly instructed the Court Administrator or simply acted knowing what the Court Administrator would do, Dr. Hallman has pleaded a plausible claim that Judge Asadoorian actively participated in the causal chain resulting in the denial of Dr. Hallman's requests for recordings of proceedings from Judge Asadoorian's courtroom. Thus, the Court should deny Defendant's motion to dismiss Judge Asadoorian as a defendant.

## II.    Judge Asadoorian Is Not Immune from This Suit.

### A.    Judges do not enjoy judicial immunity when acting in their administrative capacity, and Defendants offer no argument she was not acting in such a capacity at all relevant times.

Defendants assert that Judge Asadoorian is absolutely immune from her actions to the extent she acted in her judicial capacity. Def. MTD at 7, ECF No. 14, PageID.95. This argument *may* be premised on an assertion in Defendants' motion that Judge Asadoorian is absolutely immune from the actions she took at Mr. Hallman's probation hearing. Def. MTD, ¶5, ECF No. 14, PageID.82. But whether Judge Asadoorian has immunity from *those* actions is irrelevant because the claims in this suit pertain only to Judge Asadoorian's denial of Dr. Hallman's records request in 2022—not to Judge Asadoorian's behavior during Mr. Hallman's 2018 probation revocation hearing. Compl. ¶79, ECF No. 1, PageID.35.

As to the actual claim in this lawsuit, Defendants do not contest that Judge Asadoorian acted in her administrative capacity when she enforced the District Court policy. In turn, judges are not immune from actions undertaken in their administrative capacity. *Forrester v. White*, 484 U.S. 219, 229 (1988); *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989).

Section 1983 limits the forms of relief available against a judicial officer when acting in her *judicial* capacity, allowing only declaratory relief "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

However, a judge's actions undertaken in her administrative capacity, as opposed to her judicial capacity, do not give rise to such judicial immunity. *Forrester*, 484 U.S. at 229; *see Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[A] judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity."). As the Sixth Circuit has confirmed, "*Forrester* . . . limited absolute judicial immunity to those acts which are truly judicial acts and are not simply administrative acts." *Morrison*, 877 F.2d at 465.

Because judges are not immune from liability in a § 1983 suit for actions undertaken in an administrative capacity, and because Defendants do not contest that Judge Asadoorian acted in her administrative, rather than judicial capacity, when handling Dr. Hallman's record request, the Court should deny Defendants' motion to the extent it relies on judicial immunity.

### B. Even if Judge Asadoorian were acting in her judicial capacity, she still would not be immune from the declaratory relief sought here.

Declaratory relief is proper against a judge acting in her judicial capacity in an action pursuant to 42 U.S.C. § 1983. As noted above, Section 1983 limits the availability of injunctive relief against judicial officers. 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). The Supreme Court has also

15

held that judicial officers are generally immune from suits for money damages. *Mireles*, 502 U.S. at 9; *see also Stern v. Mascio*, 262 F.3d 600, 602 (6th Cir. 2001).

However, the "plain language of § 1983 contemplates a *declaratory judgment* against judicial officers . . . in their official capacities." *Ward*, 640 F. App'x at 467 (emphasis added). Thus, even when courts find that a judicial defendant is acting in their judicial capacity, they must analyze whether declaratory relief is appropriate rather than relying upon judicial immunity. *See, e.g.*, *Savoie v. Martin*, 673 F.3d 488, 492-93, 496 (6th Cir. 2012) (finding that a judicial defendant was acting in his judicial capacity but going on to consider availability of declaratory relief).

Even though Defendants never actually argue that Judge Asadoorian acted in her judicial capacity in her handling of Dr. Hallman's request for the District Court recording, even if she *were* acting in her judicial capacity at that time, she still would not be entirely immune from Dr. Hallman's claims, which include declaratory relief against Judge Asadoorian. Compl. ¶79, ECF No. 1, PageID.35. Defendants cite *Mireles* and *Stern* to support their claim that Judge Asadoorian is absolutely immune from actions taken in her judicial capacity, but those cases both involve damages claims, not claims for declaratory relief. *See Mireles*, 502 U.S. at 9 n.1 (expressly recognizing that absolutely judicial immunity does not extend to equitable relief); *Stern*, 262 F.3d at 602 ("Plaintiffs appeal the district court's holding that defendant,

16

a sitting judge of an Ohio trial court, enjoyed judicial immunity *from a suit for money damages*." (emphasis added)).

Defendants have offered no theory whatsoever that would render Judge Asadoorian immune from Plaintiff's claim for declaratory relief, which remains an available remedy against judicial officials acting in their judicial capacity. *Ward*, 640 F. App'x at 464. Thus, even if Judge Asadoorian were acting in her judicial capacity (which Defendants do not argue) when she handled Dr. Hallman's request for access to the District Court recording, she would still be subject to Plaintiff's claim for declaratory relief.

## CONCLUSION

The Complaint's well pleaded facts suffice to raise a reasonable inference that Judge Asadoorian was directly involved in and acquiesced to denying Dr. Hallman access to the District Court recording, therefore establishing a plausible claim to relief. Further, because she acted in her administrative capacity, not her judicial capacity, at all relevant times, Judge Asadoorian enjoys no special immunity. But even if she had been acting in her judicial capacity, she would still be properly subject to declaratory relief.

For the reasons above, the Judicial Defendants' motion to dismiss Judge Asadoorian should be denied.

17

Respectfully submitted,

s/ Philip Mayor
Philip Mayor (P81691)
Bonsitu Kitaba-Gaviglio (P78822)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
(313) 578-6800
pmayor@aclumich.org

Dated: July 21, 2025          *Attorneys for Plaintiff*