UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA HALLMAN,

    Plaintiff,

v.

Hon. TRAVIS REEDS, in his official capacity as Chief Judge of Michigan's 52nd District Court; Hon. LISA L. ASADOORIAN, in her official capacity as a judge of the third division of Michigan's 52nd District Court; and Hon. JEFFERY S. MATIS, in his official capacity as Chief Judge of Michigan's Sixth Circuit Court,

    Defendants.

Case No. 2:25-cv-10939-BRM-KGA
Hon. Brandy R. McMillion

---

### DEFENDANTS' REPLY BRIEF RE: MOTION TO DISMISS

---

## TABLE OF CONTENTS

Page No.

INDEX OF AUTHORITIES ............................................................................. iii
ARGUMENT ..................................................................................................... 1
LOCAL RULE CERTIFICATION ................................................................... 8
CERTIFICATE OF SERVICE .......................................................................... 8

## INDEX OF AUTHORITIES

Page No.

**Cases**

*Chandler v. Fla.*, 449 U.S. 560, 582 (1981) ..................................................5

*Commonwealth v. Winfield*, 464 Mass. 672 (2013).........................................2

*Conway v. United States*, 852 F.2d 187 (6th Cir. 1988) .................................3

*Estes v. State of Tex.*, 381 U.S. 532, 549 (1965) ............................................4

*Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005)......................................6

*Nixon v. Warner Communications*, 435 U.S. 589, 610 (1978) .......................2

*Post-Newsweek Stations v. United States*, 461 U.S. 931 (1983) .....................3

*Somberg v. Cooper*, 582 F. Supp. 3d 438, 446 (E.D. Mich. 2022).................7

*Stevens v. Michigan State Court Admin Office*, 2022 WL 3500193 at *6 (6th Cir. Aug. 18, 2022) .................................................................................2

*United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986) ...............................2

*United States v. Edwards*, 785 F.2d 1293 (5th Cir. 1986) ..............................3

*United States v. Kerley*, 753 F.2d 617 (7th Cir. 1985) ...................................3

*United States v. Yonkers Bd of Education*, 747 F.2d 111 (2d Cir. 1984) ..........3

*Unites States v. Hastings*, 695 F.2d 1278 (11th Cir.), *cert. denied sub nom.* .....3

*Westmoreland v. Columbia Broad. Sys. Inc.*, 752 F.2d 16 (2nd Cir. 1984)........4

**Other Authorities**

Federalist 78-85 ................................................................................................1

Jordan, *The Right of Access: Is There a Better Fit than the First Amendment?*, 57 Vanderbilt L. Rev. 1349, 1358 (2019) ............................................2

Lockerbie Victims Access Act, Public Law 118-37 ...........................................6

# ARGUMENT

Plaintiff does not argue that the audio and video recordings are judicial records subject to the First Amendment or that the limited common law right to judicial records applies. Instead, Plaintiff plants her flag on the argument that the First Amendment right to physically attend trials should be expanded to include a right to access recordings by invalidating the Michigan Court Rule. That effort should fail.

The cases Plaintiff relies on all stand for the proposition that a party has a right to <u>physical presence</u> in the courtroom.

- *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) addressed the exclusion of the public when a criminal defendant made the request.

- *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) addressed the exclusion of the public during the testimony of a minor.

- *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) addressed the exclusion of the public from voir dire in a criminal case.

- *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") addressed the exclusion of the public from a criminal preliminary hearing.[1]

---

[1] A First Amendment right of access is dubious. There is no mention of the judiciary in the First Amendment. The Federalist Papers make no mention of public trials or access rights. See Federalist 78-85. The *Richmond Newspapers*

1

Plaintiff cites no case where the right to access applies to anything but physical presence. Nor has the Sixth Circuit. *Stevens v. Michigan State Court Admin Office*, 2022 WL 3500193 at *6 (6th Cir. Aug. 18, 2022) ("we have found no case establishing the historical availability of audio recordings of court proceedings when a party can attend a trial…."). Nor have Defendants found such a case. As the Supreme Court of Massachusetts stated:

> We know of no case where the First Amendment right of access has been extended to include a right to an electronic recording of the trial where … that recording is made by a court reporter but is not the official record of the trial and is not referenced or contained in the court file.

*Commonwealth v. Winfield*, 464 Mass. 672 (2013).

The First Amendment does not "require that the trial – or any part of it – be broadcast live or on tape to the public." *Nixon v. Warner Communications*, 435 U.S. 589, 610 (1978).

Plaintiff has attempted to distinguish Defendants' citation to *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986) by saying *Beckham* only applied to evidence, not access, and was decided before *Press-Enterprise II*. ECF No.18,

---

Court so acknowledged but held it was somehow "implicit." 448 U.S. at 580. *Contra*: Jordan, *The Right of Access: Is There a Better Fit than the First Amendment?*, 57 Vanderbilt L. Rev. 1349, 1358 (2019).

2

PageID.258. That attempt fails. Two years after *Press-Enterprise II* was decided, the Sixth Circuit held that Fed. R. Crim. P. 53 (prohibiting photography in a federal court) did not infringe the First Amendment right to access. *Conway v. United States*, 852 F.2d 187 (6th Cir. 1988). In doing so, it quoted its opinion in *Beckham*, saying the "right of access consists of 'a right to be present' and the 'rights to speak and publish concerning what takes place at a trial.'" *Id*. at 188.[2]

There is no plausible argument that a First Amendment right attaches to this case. However, in the interest of completeness, Defendants address the *Press-Enterprise II* "experience and logic" test.

The "experience" prong of the test explores whether there is a "tradition of accessibility" based on historical references. 478 U.S. at 8. Plaintiff recites a history of physical access to court proceedings and a "tradition of openness." ECF No.18, PageID.248. All of the references relate to physical presence and most are directly out of *Press-Enterprise II*.

---

[2] In that regard, the Sixth Circuit joined the Second Circuit, *United States v. Yonkers Bd. of Education*, 747 F.2d 111 (2d Cir. 1984), the Fifth Circuit, *United States v. Edwards*, 785 F.2d 1293 (5th Cir. 1986), the Seventh Circuit, United States v. Kerley, 753 F.2d 617 (7th Cir. 1985) and the Eleventh Circuit, *United States v. Hastings*, 695 F.2d 1278 (11th Cir.), *cert. denied sub nom. Post-Newsweek Stations v. United States*, 461 U.S. 931 (1983).

But then Plaintiff makes the leap to recordings or livestream as a constitutional right because "it is no longer plausible or customary for people to regularly attend court in person" and that "experience" depends on "the context of evolving times and technology." ECF No.18, PageID.250.

Such access is neither constitutionally prohibited or mandated. The experience of evolving times and technology shows Plaintiff overreaches. Television was an evolving technology in the 1960s, yet the Supreme Court has held the First Amendment guarantees no such right to broadcast and allowing it can raise other constitutional concerns.

> A defendant on trial for a specific crime is entitled to his day in court, not in a stadium, or a city or nationwide arena. The heightened public clamor resulting from radio and television coverage will inevitably result in prejudice. Trial by television is, therefore, foreign to our system.

*Estes v. State of Tex.*, 381 U.S. 532, 549 (1965). Accord: *Westmoreland v. Columbia Broad. Sys. Inc.*, 752 F.2d 16, 24 (2nd Cir. 1984) ("[T]he public interest in television access to the courtroom does not now lie within the First Amendment.").

Such questions are to be decided by state experimentation and not an imagined First Amendment right.

> Dangers lurk in this, as in most experiments, but unless we were to conclude that television coverage under all conditions is prohibited by the Constitution, the states must be free to experiment. We are not empowered by the Constitution to oversee or harness state procedural experimentation; only when the state action infringes fundamental guarantees are we authorized to intervene.

*Chandler v. Fla.*, 449 U.S. 560, 582 (1981).

Since there is no First Amendment right to record or broadcast court proceedings, there is no right to access the courtroom through electronic means. Defendants' Motion describes how social media, artificial intelligence, and evolving technology expand the dangers that "lurk" in providing video copies of court proceedings. *Chandler*, *supra* at 582; ECF No.15, PageID.154-56. In 2025, unlike in the 1960s, any anonymous individual can distort a video with simple tools and share it for the world to view. The disruption to the orderly administration of justice could be extensive. Experience counsels against the broad expansionism suggested by Plaintiff by judicial decree.

Indeed, the duty to dispense justice separates the courtroom from traditional public spaces. The courthouse doors restrict the First Amendment to a minimum.

> The courtroom is a nonpublic forum, where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir. In fact, the courtroom is unique even among nonpublic fora because within its

5

> confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech.

*Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (citation omitted).

Nor does Plaintiff's "logic" argument satisfy the test. Instead, every rule regarding television, video, recording and other electronic access has been developed by the states through the appropriate public policy makers. All 50 states have some form of rule or statute that allows, prohibits, controls or otherwise regulates cameras in the courtroom, audio or video recording, livestreaming, copies of recordings and other "evolving technology" rules. Attached as Exhibit 1 is a list of every state and the court rule or statute regarding those issues. Not one of those court rules or statutes was mandated by a ruling that the United States Constitution or the state constitution requires such access. And, of course, this Court does not allow cameras or recordings. L.R. 83.31(c).[3]

---

[3] Congress has also recognized that there exists no constitutional right to remotely access court proceedings and, if desired, legislation is necessary. In 2024, Congress did just that in a special circumstance. It enacted the Lockerbie Victims Access Act, Public Law 118-37, so that "victims of the 1988 bombing of Pan Am Flight 103 over Lockerbie, Scotland" could have "remote video and telephonic access to proceeding in the case…." The statute expressly overrode Rule 53. Remote access was allowed "notwithstanding any provision of the Federal Rules of Criminal Procedure or other law or rule to the contrary…." This Act was unnecessary if the First Amendment controlled.

Plaintiff has made clear her motivation is to seek these recordings so that she can influence the outcome of Michigan judicial elections. ECF No.18, PageID.242. On the other hand, Defendants' motivation is to protect the integrity of the judicial system and the people involved. Plaintiff attended one of the court proceedings and obtained the transcript of the other. She has the right to "disseminate her desired message" on her "desired platforms" about what occurred. That is all the Constitution requires.

> Accordingly, there is no prohibition against Plaintiff's ability to disseminate a desired message and otherwise communicate to his desired platforms that occurred during a court proceeding, either in-person or virtual. This Court also emphasizes that Plaintiff can obtain transcripts to these proceedings at any time. These circumstances demonstrate the courtroom is not closed off to the public and does not interfere with the First Amendment's assurance of a free and open society.

*Somberg v. Cooper*, 582 F. Supp. 3d 438, 446 (E.D. Mich. 2022).

                                   GIARMARCO, MULLINS & HORTON, P.C.

                                    By: /s/ William H. Horton
                                         **WILLIAM H. HORTON** (P31567)
                                         Attorney for Defendants
                                         101 West Big Beaver Road, Tenth Floor
                                         Troy, Michigan 48084-5280
                                         (248) 457-7000
                                         bhorton@gmhlaw.com

Date: August 5, 2025

## LOCAL RULE CERTIFICATION

I, William H. Horton, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

/s/ William H. Horton
WILLIAM H. HORTON (P31567)

## CERTIFICATE OF SERVICE

On August 5, 2025, I certify that I electronically filed this document with the Clerk of the Court through the ECF System, which will send notice of such electronic filing to all counsel of record registered electronically

/s/ William H. Horton
WILLIAM H. HORTON (P31567)
Attorney for Defendants
bhorton@gmhlaw.com